IN UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION



**FILED**

MAR 31 2017

CLERK

| | |
|---|---|
| TROY BANGSTON, | COURT FILE NO. 17-cv-3007 |
| Plaintiff/Claimant, | |
| vs. | **COMPLAINT** |
| CHARLES BAKER TRUCKING, LLC and CHARLES BAKER d/b/a CHARLES BAKER FARMS, | |
| Defendants. | |

COMES NOW the Plaintiff, Troy Bangston, by and through his attorneys, Nasser Law Firm, P.C., and for his Causes of Action and Jurisdictional Allegations, alleges as follows:

## I. JURISDICTION

This action arises under the Fair Labor Standards Act (29 U.S.C. 201-219),the Immigration and Nationality Act, Admission of Temporary H-2A Workers, 8 U.S.C., and in particular 8 U.S.C. 1188 (b)(3), Admission of Temporary H-2A Workers, (hereinafter, "the H-2A program") well as regulations promulgated pursuant thereto and in particular 29 C.F.R. 655 including §655.122 thereof. The Court has Federal jurisdiction of these matters under 28 U.S.C. §1331 (Federal Question).

Plaintiff also asserts a cause of action under South Dakota state law SDCL § 62-3-11 pertaining to workers' compensation benefits for an employee who is employed by an employer

1

deemed not to operate under the workers' compensation title. The Court has Federal jurisdiction of this substantially related matter under 28 U.S.C. §1367 (supplemental jurisdiction).

## II.  GENERAL ALLEGATIONS

1.  At all times pertinent hereto, the Plaintiff, Troy Bangston (hereinafter, Bangston), alleges that he was a joint employee of both Defendant Charles Baker d/b/a Charles Baker Farms and Defendant Charles Baker Trucking, LLC (hereinafter, whether one or more, "Employer"); further that the business addresses of both of said employing entities were: 103 Main Street, Murdo, SD (main office) and 24525 275th Avenue Murdo, SD 57559 (shop location);

2. Both businesses, Charles Baker Farms (sole proprietorship of Charles Baker)  and Charles Baker Trucking, LLC are under the exclusive ownership and control of Charles Baker.

3. Charles Baker Trucking, LLC and Charles Baker's farming operation share numerous things: a common ownership and control by Charles Baker, a common bookkeeper/administrator, a common main office at 103 Main, Murdo, SD, and a common primary shop at 24525 275th Street North of Murdo.  The two business ventures also share certain equipment and numerous employees.

4.  Charles Baker was at all times pertinent hereto, the key principal owner, member, and operator of Charles Baker Trucking, LLC and possessed not only significant ownership thereof, but also operational control thereof including the right to hire and fire employees and was engaged in the "active management" thereof; further, Charles Baker was, as stated therefore, at a minimum, "not completely disassociated with respect to the employment of"... Bangston.

5.   Bangston's employment was full-time as a mechanic or "general shop guy" the majority of the time, performing duties for both Charles Baker d/b/a Charles Baker Farms and Charles Baker Trucking, LLC.

6.   Bangston's duties included repairing and maintaining semi trucks, automobiles, and other machinery, which machinery was used by the commercial trucking operation Charles Baker Trucking, LLC as well as by the farming operation operated by Mr. Charles Baker.  These duties included, but are not limited to:

a) changing oil, checking fluids, "greasing," changing tires, or checking air pressure in tires, performing overall safety inspections, washing, and other general maintenance or repairs on semi trucks and the 22 trailers these semi trucks pulled;

b) maintenance and repairs, "greasing," and washing of farm machinery (tractors, combines, planters, hay rakes, and other equipment);

c) changing oil, checking fluids, changing tires and checking air pressure in tires, minor mechanical repairs, and other general maintenance on passenger pickup trucks and cars;

d) assist with farming activities as needed, which included delivering people and supplies, such as water or chemicals, to and from the farm fields.   On an isolated occasion Bangtson assisted in running a hay rack, and has done a limited amount of "filling bags" and filling grain bins with the harvested crop during peak harvest time.

7.   These employers operated the two said businesses interchangeably in the fashion afore-described and at the same location so as to constitute "joint employers" operating as a single employer of the Plaintiff;

8.   On or about March 11, 2015, while working within the course and scope of his said employment, Bangston suffered serious injuries in the shop which arose out of his said employment as a mechanic:

a) No one witnessed the incident, but appears that Bangtson was performing some task on a semi truck tire, when it unexpectedly exploded, striking and injuring Bangtson;

3

b) Bangston suffered severe physical injuries, including but not limited to, a severe comminuted fracture of his right femur requiring ORIF, 6 broken ribs, and a traumatic brain injury involving a subarachnoid hemorrhage;

c) Bangston was discovered unconscious immediately following the incident by Mr. Charles Baker, was taken by ambulance to Avera St. Mary's in Pierre, SD where he was stabilized. He was then air-lifted to Avera McKennan Hospital in Sioux Falls, SD where he underwent orthopedic surgery and other necessary treatment and rehabilitation;

d) As a result of Bangston's traumatic brain injury, his memory of the events surrounding this incident have been impaired, and he is unable to recall the specific details of what caused the tire to explode;

e) Employer had actual notice, which is legally sufficient and legally timely notice and knowledge of said injuries and the work-related nature of said injuries;

f) Bangston has personally incurred substantial medical expenses as a result of this injury and necessary treatment, and anticipates additional ongoing medical expenses to be incurred;

g) Bangston suffers from serious and permanent injuries to his leg, hip and brain;

h) Bangston's injuries described herein, physical limitations, need for medical treatment, and disability described herein are a direct result of the work-related injuries, which injuries are and remain a major contributing and a proximate and legal cause of Bangston's condition complained of.

9. Bangtson has commenced an action with the Department of Labor and Regulation seeking workers' compensation benefits for the work related injury described above, which is and remains a major contributing cause of the injuries and disabilities complained of, and Bangtson's need for medical treatment. Specifically Bangston seeks to recover some or all of the following worker's compensation benefits allowed under SDCL Title 62:

a) Medical Benefits pursuant to SDCL 62-4-1, et seq; and
b) Temporary Total Disability pursuant to SDCL 62-4-3, et seq; and

    c) Permanent Partial Impairment pursuant to SDCL 62-4-6, et seq; and

    d) Permanent Total Disability pursuant to SDCL 62-4-7 and 7.1, et seq; and

    e) Attorney's Fees pursuant to SDCL 58-12-3, et seq; and

    f) Prejudgment Interest pursuant to SDCL 21-1-11 - 13.1, et seq; and

    g) Statutory Penalties pursuant to SDCL 62-4-10.1, et seq; and

    h) Rehabilitation Benefits pursuant to SDCL 62-4-5.1, et seq.

10. Bangtson requests that the court take judicial notice of the worker's compensation proceeding entitled and docketed with the South Dakota Department of Labor and Regulation, Workers' Compensation Division, as:

HF NO.: 185, 2014/15
Troy Bangston, Employee/Claimant
vs.
Charles Baker Trucking, LLC and Charles Baker d/b/a Charles Baker Farms, Employers, and
Acuity, a Mutual Insurance Company,  Insurer

11.    Both Employers denied Bangston's state workers' compensation claim; Charles Baker Trucking, LLC and Acuity based upon their claims that Bangston was not an employee of Charles Baker Trucking, LLC and therefore also not insured by its workers' compensation insurer, Acuity.  Charles Baker d/b/a Charles Baker Farms denied the claim on the grounds that Bangtson was a farm laborer who was exempt under SDCL 62-3-11.

### III CAUSES OF ACTION

**A.    FAILURE TO PROVIDE REQUIRED TERMS OF EMPLOYMENT TO DOMESTIC U.S. WORKERS MANDATED BY 8 U.S.C. 1188(B)(3) ("H-2A PROGRAM")**

12. Plaintiff hereby re-alleges every allegation, matter, and thing contained in his general allegations and in the following causes of action as if the same were set forth in full herein.

13. At all times pertinent hereto, the Defendant Employers participated in the hiring and employment of temporary foreign migrant workers under the auspices of the H-2A program and signed contracts agreeing to be subject to legal obligations to abide by the requirements of said program including, but, not by way of limitation the requirements found in 20 C.F.R. 655.122.

14. Under the H-2A Program, Employers must comply various regulations, including but not limited to the following relevant regulations:

**§ 655.122 Contents of job offers**.
(a) *Prohibition against preferential treatment of aliens*. The employer's job offer must <u>offer to U.S. workers no less than the same benefits, wages, and working conditions that the employer is offering, intends to offer, or will provide to H-2A workers.</u> Job offers may not impose on U.S. workers any restrictions or obligations that will not be imposed on the employer's H-2A workers. This does not relieve the employer from providing to H-2A workers at least the same level of minimum benefits, wages, and working conditions which must be offered to U.S. workers consistent with this section.

\*\*\*

(c)*Minimum benefits, wages, and working conditions.* Every job order accompanying an *Application for Temporary Employment Certification* must include each of the minimum benefit, wage, and working condition provisions listed in paragraphs (d) through (q) of this section.

\*\*\*

(e)*Workers' compensation.*

(1) The employer <u>must provide workers' compensation insurance coverage</u> in compliance with State law covering injury and disease arising out of and in the course of the worker's employment. <u>If the type of employment for which the certification is sought is not covered by or is exempt from the State's workers' compensation law, the employer must provide, at no cost to the worker, insurance covering injury and disease arising out of and in the course of the worker's employment that will provide benefits at least equal to those provided under the State workers' compensation law for other comparable employment.</u>

(2) Prior to issuance of the temporary labor certification, the employer must provide the CO with proof of workers' compensation insurance coverage meeting the requirements of this paragraph, including the name of the insurance carrier, the insurance policy number, and proof of insurance for the dates of need, or, if appropriate, proof of State law coverage.

\*\*\*

**CFR § 655.1300.** Overview of subpart B and definition of terms.

... *Adverse effect wage rate (AEWR)* means the minimum wage rate that the Administrator, OFLC has determined must be offered and paid to every H-2A worker employed under the DOL-approved *Application for Temporary Employment Certification* in a particular occupation and/or area, as well as to U.S. workers hired by employers into corresponding employment during the H-2A recruitment period, to ensure that the wages of similarly employed U.S. workers will not be adversely affected. (underlining supplied).

15.     Despite the clear obligation of Defendants as employers and joint employers to provide workers compensation insurance, Defendants intentionally and in wanton and reckless disregard of their obligation to do so and despite having participated in the H-2A program and having received the benefits thereof, chose not to and did not provide said workers' compensation coverage for Bangston or any of the other domestic U.S. workers in corresponding employment, or to any of the H-2A workers, fully intending that these employees have no workers' compensation coverage if and when they suffered an injury arising out of and within the course and scope of employment.

16.  As a direct proximate and legal result of Defendants' failure, as aforesaid to provide such workers' compensation coverage Bangtson has been caused to lose all benefits due under the workers' compensation benefit provisions of SDCL 62 which Defendants are required to pay to Bangston per 20 CFR 655.122.

17. Also, at all times pertinent hereto, the Defendants as part of the H-2A program are required to pay domestic U.S workers the same wage rates and compensation as H-2A workers are required by law to be paid.  This wage rate is called the Adverse Effect Wage Rate (AEWR) and is determined by the Federal Government on an annual basis.  In 2015, the AEWR was $13.59/hour in South Dakota.  Bangtson was paid $9.25/hour or less during his employment by Employers.

18. The Defendants have deemed Bangtson to be and have testified that Bangtson was, at all times pertinent, a farm worker employed by the Defendants simultaneously with H-2A workers.

19. The Defendants, at all times pertinent hereto, knowing of such requirement, and despite having participated in the H2-A program and having received the benefits thereof, in wanton and reckless disregard of their obligation to do so, chose not to and did not pay Bangtson the same wages and compensation, did not provide workers' compensation coverage for Bangston, as a domestic U.S. Worker, fully intending that he have less wages than the H-2A workers.

20. The Defendants acts as described herein constitute violations of 8 U.S.C. 1188 and 20 CFR 655.122 which are laws designed for the direct benefit of Bangtson and other similarly situated domestic U.S. workers.

21. The statutory requirements of 8 U.S.C. 1188 and 20 CFR 655.122 et. seq.  are intended to establish minimum contractual terms of employment between H-2A employers and their employees (H-2A workers and domestic); accordingly, these requirements

constitute provisions of Bangston's Employment contract with Defendants and their failures to comply with said laws constitute a breaches of contract.

### B. WORKERS' COMPENSATION BENEFITS UNDER SDCL 62-3-11 DUE TO EMPLOYERS' WAIVER OF THE AGRICULTURAL LABORER EXEMPTION

22.  Plaintiff hereby re-alleges every allegation, matter, and thing contained in his general allegations and in the preceding causes of action as if the same were set forth in full herein.

23.  SDCL 62-3-15 exempts from application of the workers' compensation title, "farm or agricultural laborers, " however SDCL 62-3-17 provides for a voluntary waiver of said SDCL 62-3-15 exemption as follows: "the employer may place himself or herself under the provisions of this title by voluntarily insuring his or her liability…"

24.  Bangtson contends that Employers have waived the state law farm or agricultural laborer exemption by obligating themselves under federal law to insure H-2A workers and domestic workers in corresponding employment, by virtue of their application, recruitment and employment of H-2A workers.

25.  Employers who have not provided the required security (insurance, proof of solvency to self-insure, See 62-5-1 through 62-5-5) to be deemed to have accepted the provision of the workers' compensation title (SDCL 62-3-5), are liable under SDCL 62-3-11 for either tort damages or workers' compensation benefits, at the election of the employee:

> Election to proceed against employer--Options. Any employee, who is employed by an employer who is deemed not to operate under this title in accordance with § 62-5-7, or the dependents of such deceased employee, may elect to proceed against the employer in any action at law to recover damages for personal injury or death; or may elect to proceed against the employer in circuit court under the provisions of this title, as if the employer had elected to

operate thereunder by complying with §§ 62-5-1 to 62-5-5, inclusive. The measure of benefits shall be that provided by § 62-4-1 plus twice the amount of other compensation allowable under this title. However, no employee nor any dependent of the employee may recover from both actions.

26. Plaintiff Bangtson elects to pursue workers' compensation benefits in the courts under state law pursuant to SDCL 62-3-11, as follows:

a) Medical Benefits pursuant to SDCL 62-4-1, et seq; and
b) Temporary Total Disability pursuant to SDCL 62-4-3, et seq; and
c) Permanent Partial Impairment pursuant to SDCL 62-4-6, et seq; and
d) Permanent Total Disability pursuant to SDCL 62-4-7 and 7.1, et seq; and
e) Attorney's Fees pursuant to SDCL 58-12-3, et seq; and
f) Prejudgment Interest pursuant to SDCL 21-1-11 - 13.1, et seq; and
g) Statutory Penalties pursuant to SDCL 62-4-10.1, et seq; and
h) Rehabilitation Benefits pursuant to SDCL 62-4-5.1, et seq.

C. PAST UNDERPAYMENT OF WAGES TO PLAINTIFF IN VIOLATION OF H-2A REGULATIONS AND THE FAIR LABOR STANDARDS ACT

27. Plaintiff hereby re-alleges every allegation, matter, and thing contained in his general allegations and in the preceding causes of action as if the same were set forth in full herein.

28. Plaintiff Bangtson asserts his entitlement to the difference in pay he was receiving ($9.00-$9.25/hour) and the AEWR amount he should should have received as a domestic worker in corresponding employment under the H-2A regulations (approx. $13.41-$13.59/hr)

29. The failure of Defendants, as afore-described, to pay the required H-2A wage also constitutes a violation of the Fair Labor Standards act.

## D. RETALIATION FOR FILING A WORKERS' COMPENSATION CLAIM

30. Plaintiff hereby re-alleges every allegation, matter, and thing contained in his general allegations and in the preceding causes of action as if the same were set forth in full herein.

31. In violation of SDCL 62-1-16, Defendant Employers fired Employee solely because he filed a lawful workers' compensation claim.

32. As a direct, legal, and proximate result of said retaliatory wrongful termination the Plaintiff was forced to remain unemployed without compensation until able to work and then was forced to seek alternative employment at a financial loss which loss shall be proven in detail at trial;

33. As a further direct, proximate, and legal result of the Defendants' said actions, the Plaintiff who was left without sufficient funds to support his family, has suffered great and severe mental anguish and loss of enjoyment of life.

34. The said actions of the Defendants were willful, wanton, and malicious within the meaning of SDCL 21-1-4.1, entitling Plaintiff to damages for the purpose of example.

35. The damages requested under this count exceed $75,000.00.

WHEREFORE, the Plaintiff respectfully requests and moves the Court for judgment in his favor and agains the defendants, jointly and severally, for the damages requested herein and which will be proven at trial, including but not limited to, all benefits due for workers' compensation including double indemnity benefits, double wages wrongfully withheld, and damages for retaliation; lost wages, mental anguish and loss of enjoyment of life; as well as including reasonable attorney's fees, prejudgment interest, and the costs of the action, and such other an further relief as the Court may deem just an equitable.

11

Dated this 31st day of March, 2017.

NASSER LAW FIRM, P.C.

N. Dean Nasser, Jr.
Jolene R. Nasser
204 South Main Avenue
Sioux Falls, SD 57104-3610
Telephone: (605) 335-0001
Facsimile: (605) 335-6269
Email: jolene@nasserlaw.com
*Attorneys for Plaintiff*

PLAINTIFF REQUESTS A TRIAL BY JURY.

Dated this 31st day of March, 2017.

NASSER LAW FIRM, P.C.

N. Dean Nasser, Jr.

12